UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| HALONDA NAFF, et al., | Case No.: 1:15-cv-00515 - JLT |
| Plaintiffs, | ORDER DENYING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT |
| v. | |
| STATE FARM GENERAL INSURANCE COMPANY, | |
| Defendant. | |
| AND RELATED CROSS-CLAIMS | |

Halonda and Jarvis Naff contend Defendant State Farm General Insurance Company wrongfully cancelled their insurance policy and denied their claim following a house fire that caused the loss of personal property. State Farm argues its actions were proper and seeks a declaration of rights in its counterclaim, and seeks summary judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure. (Doc. 31) For the following reasons, Defendant's motion for summary judgment is **DENIED**.

///

///

///

///

1

**I.     Undisputed Facts[1]**

On December 26, 2012, the home owned by Jarvis and Halonda Naff at 331 Donna Avenue in Bakersfield, California, caught fire and burned. (JSF 9)  The contents of the home were totally lost. (PSF 17)  The Naffs had in place a homeowner's policy issued by State Farm.  (JSF 8; Doc. 6-1 at 2-51)[2]  The policy provided coverage in the amount of $154,300 for the dwelling, $15,430 for the dwelling extension and $115,725 for personal property.  (*Id.;* PSF 6)  The policy included the following condition:

> 2.  **Concealment or Fraud**.  This policy is void as to you and any other insured, if you or any other insured under this policy has intentionally concealed or misrepresented any material fact or circumstance relating to this insurance, whether before or after a loss.

(JSF 8; Doc. 6-1 at 43, emphasis in original)

After the fire, Plaintiffs hired David Coston to do repair work on the home. (PSF 14)  Mr. Avery "asked David Coston to have an inventory prepared identifying the contents of the house."  (PSF 15; Coston Depo. 24:8-24)  "Pursuant to Mr. Avery's direction . . . Coston asked Sharon Endlsey to go through everything and to document every item that [she] saw which had been destroyed in the fire." (PSF 18)  Ms. Endley went to the home and listed every item that she could recognize, prepared an inventory and gave it to Mr. Avery.  (PSF 20, 25)  Thomas Collier, who worked for State Farm's Special Investigations Unit, "determined the [total] value of the property on the Endsley list … was approximately $147,815.18."  (PSF 43)

On May 29, 2013, Plaintiffs gave State Farm "an inventory of personal property they claim was damaged and destroyed . . . and requested financial compensation for the damaged personal property." (JSF 10)  Mrs. Naff completed an inventory form that requested information for each item claimed,

---

[1] The parties filed a "Joint Statement of Undisputed Material Facts" on May 6, 2016.  (Doc. 31-2)  Facts from this document are identified as "JSF." Undisputed facts taken from Defendant's "Separate Statement" (Doc. 31-3) are identified as "DSF," while undisputed facts taken from Plaintiff's "Statement of Additional Facts" (Doc. 32-1 at 7-25) are identified as "PSF".

[2] Defendant also requests that the Court take judicial notice of State Farm's Answer and Counterclaim, to which the Policy is attached as "Exhibit A".  The Court may take judicial notice of material incorporated by reference into a pleading.  *Coto Settlement v. Eisenberg*, 593 F.3d 1031, 1038 (9th Cir. 2010).  Documents are incorporated into the pleadings by reference where the claimant "necessarily relies upon a document or the contents of the document are alleged in a complaint, the document's authenticity is not in question and there are no disputed issues as to the document's relevance." *Id.*, 593 F.3d at 1038; *see also U.S. v. Corinthian Colleges*, 655 F.3d 984, 999 (9th Cir. 2011).  Here, the insurance policy with State Farm was attached as "Exhibit A" to the Counterclaim filed by Defendant.  The document is relied upon by Defendant in the Counterclaim, there is no question as to its authenticity, and its relevance is undisputed.  Accordingly, Defendant's request for judicial notice is **GRANTED**.

such as where it was purchased, the age, and "today's repair cost/replacement cost/amount of loss (without tax)." (PSF 27) The Naffs claim that each item on Mrs. Naff's inventory was in the home at the time of the fire. (JSF 11) They deny that they knowingly misrepresented the age or value of any item on the inventory. (JSF 12; JSF 13) The reported total value of items on Mrs. Naff's inventory form that they owned at the time of the bankruptcy petition was approximately $26,000. (*See* JSF 14-40)

In June 2013, Mrs. Naff gave a recorded statement to Mr. Collier. (PSF 34) Mrs. Naff "indicated she had felt overwhelmed by the entire process… and been confused in regard to how to complete certain columns including the columns for where purchased, age, and 'today's repair cost/replacement cost/amount of loss." (*Id.*) Mr. Avery and Mr. Collier directed Mrs. Naff to provide a new inventory form. (PSF 35)

On August 13, 2013, "Plaintiffs submitted a revised loss inventory to State Farm." (JSF 41) Mrs. Naff reported she was advised "to be more accurate on how long she had the items" prior to submitting the second inventory. (JSF 43) Mrs. Naff asserts she "remove[ed] some items that had been found in storage, combin[ed] items, and correct[ed] certain information that she was confused by." (PSF 36) Plaintiffs maintain "each item on the August 13, 2013 inventory was in the home at the time of the fire." (JSF 44) Plaintiffs deny they "knowingly misrepresented the age of even one item," and "deny that they knowingly overvalued even one item" on the August inventory. (JSF 45-46) The reported total value of items that Mrs. Naff indicated were aged three years or more on the August inventory was approximately $18,000. (*See* JSF 47-54, 60-66, 68-76, 78-84; DSF 55-58, 67, 77, 85-86)

During the investigation, State Farm learned that the Naffs had filed Chapter 7 Bankruptcy.[3] (DSF 1; Doc. 32-4 at 3) On the voluntary petition, the Naffs "declare[d] under penalty of perjury that the information provided in this petition is true and correct." (DSF 2; Doc. 31-4 at 6) On the

---

[3] Defendant requests that the Court take judicial notice of the Bankruptcy Petition, supporting schedules and Notice of Discharge filed in United States Bankruptcy Court, Eastern District of California, Case No. 10-18614. (Doc. 31-4) The Court may take judicial notice of a fact that "is not subject to reasonable dispute because it (1) is generally known within the trial court's territorial jurisdiction; or (2) can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned." Fed. R. Evid. 201. The records of court proceedings cannot reasonably be questioned, and judicial notice may be taken of a court's record and docket. *Mullis v. United States Bank. Ct.*, 828 F.2d 1385, 1388 n.9 (9th Cir. 1987); *Valerio v. Boise Cascade Corp.*, 80 F.R.D. 626, 635 n. 1 (N.D.Cal.1978), *aff'd*, 645 F.2d 699 (9th Cir. 1981); *see also Rodic v. Thistledown Racing Club, Inc.*, 615 F.2d 736, 738 (6th. Cir. 1980). Accordingly, the Court may take judicial notice of these documents in the bankruptcy proceeding, as well as assertions of the parties or on their behalf made in the documents. To that extent, Defendant's request is **GRANTED**.

"Schedule B" form, the Naffs were directed to "list all property of the debtor of whatever kind." (*Id.* at 14) Plaintiffs indicated they had $300.00 in a bank account; $3,000 in "[h]ousehold furnishings including electronics and appliances; $500.00 in "[c]lothing and wearing apparel;" $500.00 in jewelry; and $2,000.00 in "[f]irearms and sporting equipment including photographic equipment." (*Id.*)

On December 4, 2015, Mr. Collier telephoned Mrs. Naff and told her State Farm had completed its investigation and was denying the claim for the personal property losses. (Doc. 31-6 at 99) The information was further detailed in a letter dated December 5, 2015:

> Our investigation revealed you intentionally concealed and/or misrepresented material facts when presenting your claim to State Farm. As a result, we must regretfully, void your Homeowners Policy as of the date of the loss, December 26, 2012, and deny your claim. Below, we provide examples of some of the information you intentionally misrepresented and/or concealed when making your claim.
>
> - On June 18, 2013, you contacted Claim Representative Michael Avery and inquired about a payment for your patio cover. Information in your claim file, as well as images available on-line, did not reveal you had a patio cover at your home when the fire occurred on December 26, 2012.
>
>   You met with Claim Representative Avery at your home later that day and described a patio cover of approximately 20 feet by 20 feet. You claimed the patio cover was badly damaged as a result of the fire.
>
>   In your subsequent recorded statements with Claim Representative Tom Collier, you and Mr. Naff indicated you did not make a claim for a patio cover, and explained a patio cover was not damaged at your home as a result of the fire.
>
>   You made false representations about a patio cover to Claim Representative Avery in an effort to obtain payment from your Homeowners Policy for a loss you did not sustain.
>
> - On May 30, 2013, you presented an inventory of personal property damaged by the December 26, 2012 fire at your home. In his recorded statement, Mr. Naff indicated some mistakes may have been made, and the loss inventory you submitted for your claim should be revised.
>
>   You submitted a revised loss inventory to State Farm on August 15, 2013. The replacement cost of the personal property claimed on the new loss inventory was approximately one half of what you claimed in the May 30, 2013 loss inventory.
>
>   At the time of your examination under oath, you explained the inventory of damaged personal property you submitted on May 30, 2013 was the accurate assessment of your personal property loss. Despite Mr. Naff's acknowledgement some mistakes may have been made in the May 30, 2013 inventory, and your subsequent submission of a significantly revised loss inventory, you testified your initial loss inventory was accurate.
>
>   As you know, your general contractor, Image Builders, made an inventory of the personal property at your residence premises after the fire. State Farm compared

4

> the inventory of damaged personal property you submitted for your claim on May 30, 2013 with the inventory prepared on site by your contractor. Your inventory of damaged personal property included numerous items not found at your home by your contractor. The replacement cost you claimed to State Farm for items your contractor did not observe at your home following the fire was nearly $112,000.00.
>
> State Farm must, regretfully, conclude you intentionally concealed and misrepresented material information when making your personal property claim based on the differences in the inventory you originally submitted, your revised loss inventory, and the inventory prepared by Image Builders.

(Doc. 31-6 at 99-100)   State Farm indicated in the letter that the above list was "not meant to be an exhaustive description of each and every concealment and/or misrepresentation you made." (*Id.* at 100) State Farm indicated the claim was also denied because Mrs. Naff "did not comply with [the] duties after a loss as described in the Homeowners Policy"—which included providing documentation in support of the claim. (*Id.*)  Finally, State Farm indicated it did "not intend, by this letter, to waive any policy defenses in addition to those stated…and reserve[d] its right to assert additional policy defenses at any time." (*Id.* at 101)

Plaintiffs filed a claim with the Department of Insurance, and received a "right to sue" on December 15, 2014. (Doc. 1-2 at 8)  Accordingly, Plaintiffs initiated this action by filing a complaint in Kern County Superior Court on February 19, 2015, alleging State Farm is liable for: (1) a breach of the duty of good faith and fair dealing, (2) breach of contract, (3) intentional infliction of emotional distress, and (4) negligent infliction of emotional distress. (*Id.* at 5-12)  State Farm filed Notice of Removal and its Answer in April 2015. (Docs. 1, 6)

## II.     Evidentiary Objections

### A.     Declaration of Halonda Naff

Under the "sham affidavit" rule, "a party cannot create an issue of fact by an affidavit contradicting his prior deposition testimony." *Kennedy v. Allied Mutual Ins. Co*., 952 F.2d 262, 266 (9th Cir. 1991).  The Ninth Circuit explained, "[I]f a party who has been examined at length on deposition could raise an issue of fact simply by submitting an affidavit contradicting his own prior testimony, this would greatly diminish the utility of summary judgment as a procedure for screening out sham issues of fact." *Id.*  Because of the jury's role in resolving questions of credibility, courts have urged caution when applying the sham affidavit rule. *Id.* (citing *Kennet Murray Corp. v. Bone*,

5

1  622 F.2d 887, 894 (5th Cir. 1980)); *see also Yeager v. Bowlin*, 693 F.3d 1076, 1080 (9th Cir. 2012)
2  (explaining the sham affidavit rule has limited application "because it is in tension with the principle
3  that the court is not to make credibility determinations when granting or denying summary judgment").
4        To determine whether a declaration should be stricken as a sham, the Ninth Circuit requires the
5  district court to "make a factual determination that the contradiction was actually a 'sham,'" and created
6  specifically to avoid summary judgment. *Van Asdale v. Int'l Game Tech.*, 577 F.3d 989, 998 (9th Cir.
7  2009). In addition, "the inconsistency between a party's deposition testimony and subsequent affidavit
8  must be clear and unambiguous to justify striking the affidavit." *Id.* at 998-99. The Court explained
9  that "minor conflicts between [a declarant's] earlier deposition testimony and subsequent declaration…
10 do not justify invocation of the sham affidavit rule." *Id.* at 999.
11       Defendant argues the declaration of Mrs. Naff submitted in opposition to State Farm's motion
12 should be stricken as a sham declaration. (Doc. 33 at 11) Defendant argues that Mrs. Naff asks the
13 Court "to believe what is clearly and unambiguously contrary to her prior testimony and statements to
14 State Farm." (Doc. 33 at 12) Defendant observes Mrs. Naff "testified at deposition that anything
15 owned by her adult daughter Joshlyn was out of the house at the time of the fire," though some items
16 remained for Joshlyn's baby. (*Id.*, citing H. Naff Depo. 137:23-138:18) However, in the declaration
17 Mrs. Naff indicated Joshyln "did have some personal property at [the] house," including bras, plastic
18 containers, and purses. (Doc. 32-1 at 1, 10, 12, Naff Decl. ¶ 2) In addition, Defendant notes Mrs. Naff
19 "testified during her examination under oath that at least one of the fishing baskets was hers for when
20 she and her husband would go fishing two to three times a week," but in the attachment to her
21 declaration indicated the four fishing baskets belonged to Jeremy, Jarvis Jr., and Jalasia. (Doc. 33 at 12;
22 *see also* Doc. 32-4 at 10) While clearly the statements conflict, there is no showing that the conflicts
23 are significant and, therefore, they do not warrant an order striking the declaration under the "sham
24 affidavit" rule.
25       Defendant contends the Court is also being asked to "believe the unbelievable" because Mrs.
26 Naff asserts her daughter Jalasia "was the true owner of the 70 Fisher Price Laugh & Learn CDs,
27 350 Disney Books, Crayola crayons, arts & crafts boxes, glue, 50 kid game cards, [and] 2 boxes of
28 sidewalk chalk," as opposed to belong to Mrs. Naff "as part of her in-home daycare [operation]." (Doc.

33 at 12) While the Court cannot determine whether Defendant's supposition is correct—it may be—notably, Defendant does not identify any conflicting statements Mrs. Naff made under oath to support this supposition. Indeed, the Court reviewed the entirety of her statements made under oath to State Farm attached to Defendant's motion, as well as the transcript of the deposition testimony, and did not find any "clear and unambiguous" testimony to the contrary.

Finally, Defendant asserts the classification of items as "gifts" to her children, including CDs, DVDs, and game consoles indicates the declaration is a sham. (Doc. 33 at 13-14, citing Doc. 32-4 at 5, Naff Decl. ¶ 12) Defendant contends that Mrs. Naff "Declared under Penalty of Perjury to the United States Bankruptcy Court for the Eastern District of California that she made no such gifts." (*Id.*, citing Doc. 31-4 at 31) Notably, in the declaration Mrs. Naff does not indicate who the gifts were from, whether from her, her husband or Mrs. Naff's father— who gave her "several hundred dollars, if not more" each month for several years—or when the gifts were received by her children. (*See* Doc. 32-4, ¶¶ 6, 23) Thus, the evidence is ambiguous such that there is not a clear conflict between the declaration and the representation made to the Bankruptcy Court . (*See* Doc. 31-4 at 31)

Though Defendant raises issues that may certainly cause the jury to disbelieve the plaintiffs, it fails to identify "clear and unambiguous" conflicts between the deposition testimony and subsequent declaration of Halonda Naff, the Court does not find the declaration is a sham created to avoid summary judgment. Therefore, Defendant's objection to the declaration as a "sham" is **OVERRULED**.

**B.  Objections as to Relevance**

Previously, this Court observed that "attorneys routinely raise every objection imaginable without regard to whether the objections are necessary, or even useful, given the nature of summary judgment motions in general, and the facts of their cases in particular." *Burch v. Regents of the Univ. of Cal.*, 453 F.Supp. 2d 1110, 1119 (E.D. Cal. 2006). Here, both parties object that evidence presented by the other party is irrelevant. However, such objections are inappropriate, because the Court must determine whether a fact is relevant and material as part of "the summary judgment standard itself." *See id.* Accordingly, objections on these grounds are **OVERRULED**.

///

### C.     Conclusion

To the extent that statements offered by either party are speculative or represent a legal conclusion, the Court, as a matter of course, will not factor that material into the analysis. *See Burch*, 433 F. Supp.2d at 1119 ("[S]tatements in declarations based on speculation or improper legal conclusions, or argumentative statements, are not *facts* and likewise will not be considered on a motion for summary judgment. Objections on any of these grounds are simply superfluous in this context.") (citation omitted, emphasis in original).  Rather, the Court's analysis cites evidence only that it has deemed admissible.

### III.     Legal Standards for Summary Judgment

The "purpose of summary judgment is to pierce the pleadings and to assess the proof in order to see whether there is a genuine need for trial." *Matsushita Elec. Indus. Co. Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (citation omitted).  Summary judgment is appropriate when there is "no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).  In addition, Rule 56 allows a court to grant summary adjudication, or partial summary judgment, when there is no genuine issue of material fact as to a particular claim or portion of that claim.  Fed. R. Civ. P. 56(a); *see also Lies v. Farrell Lines, Inc.*, 641 F.2d 765, 769 n.3 (9th Cir. 1981) ("Rule 56 authorizes a summary adjudication that will often fall short of a final determination, even of a single claim . . .") (internal quotation marks and citation omitted).  The standards that apply on a motion for summary judgment and a motion for summary adjudication are the same.  *See* Fed. R. Civ. P. 56 (a), (c); *Mora v. Chem-Tronics*, 16 F. Supp. 2d 1192, 1200 (S.D. Cal. 1998).

Summary judgment, or summary adjudication, should be entered "after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).  The moving party bears the "initial responsibility" of demonstrating the absence of a genuine issue of material fact.  *Celotex,* 477 U.S. at 323.  An issue of fact is genuine only if there is sufficient evidence for a reasonable fact finder to find for the non-moving party, while a fact is material if it "might affect the outcome of the suit under the governing law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986); *Wool v. Tandem*

*Computers, Inc.*, 818 F.2d 1422, 1436 (9th Cir. 1987). A party demonstrates summary adjudication is appropriate by "informing the district court of the basis of its motion, and identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any,' which it believes demonstrates the absence of a genuine issue of material fact." *Celotex*, 477 U.S. at 323 (quoting Fed. R. Civ. P. 56(c)).

If the moving party meets its initial burden, the burden then shifts to the opposing party to present specific facts that show there is a genuine issue of a material fact. Fed R. Civ. P. 56(e); *Matsushita*, 475 U.S. at 586. An opposing party "must do more than simply show that there is some metaphysical doubt as to the material facts." *Id.* at 587. The party is required to tender evidence of specific facts in the form of affidavits, and/or admissible discovery material, in support of its contention that a factual dispute exits. *Id.* at 586 n.11; Fed. R. Civ. P. 56(c). Further, the opposing party is not required to establish a material issue of fact conclusively in its favor; it is sufficient that "the claimed factual dispute be shown to require a jury or judge to resolve the parties' differing versions of the truth at trial." *T.W. Electrical Serv., Inc. v. Pacific Elec. Contractors Assoc.*, 809 F.2d 626, 630 (9th Cir. 1987). However, "failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." *Celotex*, 477 U.S. at 323.

The Court must apply standards consistent with Rule 56 to determine whether the moving party demonstrated there is no genuine issue of material fact and judgment is appropriate as a matter of law. *Henry v. Gill Indus., Inc.*, 983 F.2d 943, 950 (9th Cir. 1993). In resolving a motion for summary judgment, the Court can only consider admissible evidence. *Orr v. Bank of America, NT & SA*, 285 F.3d 764, 773 (9th Cir. 2002) (citing Fed. R. Civ. P. 56(e); *Beyene v. Coleman Sec. Servs., Inc.*, 854 F.2d 1179, 1181 (9th Cir. 1988)). Further, evidence must be viewed "in the light most favorable to the nonmoving party" and "all justifiable inferences" must be drawn in favor of the nonmoving party. *Orr*, 285 F.3d at 772; *Addisu v. Fred Meyer, Inc.*, 198 F.3d 1130, 1134 (9th Cir. 2000).

**IV.     Discussion and Analysis**

    **A.     Estoppel**

Defendant's motion for summary judgment is premised, in large part, upon representations Plaintiffs made to the Bankruptcy Court in 2010 and inconsistency with the inventory lists provided

after the fire. (*See* Doc. 31-1 at 9-18) Plaintiff contends State Farm is "estopped from relying on the Bankruptcy [proceedings] because it was not a basis for denying the Naffs' claim or voiding their insurance policy," which Plaintiff argues is a violation of the California Code of Regulations.[4] (Doc. 32 at 15)

Though cast as estoppel, the argument sounds more in the doctrine of waiver. However, the Ninth Circuit has determined that in an insurance context, "the distinction between waiver and estoppel has been blurred." *Intel Corporation v. Hartford Accident & Indemnity Co.*, 952 F.2d 1551, 1559 (9th Cir. 1991). The court explained that an insurer has an obligation to notify the insured of the policy exclusions upon which a denial is based, and failure to do so results in the ground being waived. *Id.* at 1560-61. "[W]hatever exclusions an insurer fails to include in a letter denying coverage are lost forever." *Id.* at 1560. Thus, the insurer is estopped from later "'sandbagging' the insured by constantly raising additional exclusions." *Id.* at 1560 (citing *McLaughlin v. Connecticut General Life Ins. Co.*, 565 F.Supp.434, 451 (N.D. Cal. 1983)).

The rationale behind the doctrine is sound. "If an insurance company could deny a claim without thoroughly investigating it and then defend a subsequent lawsuit on grounds which it develops during discovery for trial, the company's incentive to fulfill its duty to investigate would be significantly diminished." *Intel,* at 1559, citing *McLaughlin*, at 451. However, to invoke the doctrine, the insured must demonstrate either there has been misconduct by the insurer that prejudices the insured in recovering on the claim or there was detrimental reliance by the insured. *Intel Corp.*, 952 F.2d at 1559.

It is undisputed that the defendant notified the Naffs of the exclusions in the policy upon which

---

[4] Cal. Code of Regulations, Title 10, Chapter 5, Subchapter 7.5, section 2695.7(b)(1) reads, "Where an insurer denies or rejects a first party claim, in whole or in part, it shall do so in writing and **shall provide to the claimant a statement listing all bases for such rejection or denial and the factual and legal bases for each reason** given for such rejection or denial which is then within the insurer's knowledge." (Emphasis added) California courts have determined, however, that "neither the Insurance Code nor regulations adopted under its authority provide a private right of action." *Rattan v. United Servs. Auto. Ass'n*, 84 Cal.App.4th 715, 724 (2001); see also *City of Hollister v. Monterey Ins. Co.*, 165 Cal.App.4th 455, 488 (2008) (noting that "violations of the fair claims practices regulations do not give rise to a private right of action").

it was denying the claim—"Your Duties After Loss"[5] and "Concealment or Fraud"—both exclusions set forth in the policy. (Doc. 31-6 at 100-101) The dispute centers on whether State Farm properly set forth the factual bases upon which it contended the exclusions applied.

Plaintiffs contend that when State Farm denied their claim, "the reasons provided were: (1) the alleged claim for the patio cover; (2) the discrepancies in the inventories; and (3) the failure to provide requested documentation." (Doc. 32 at 15) Because there was no reference to the bankruptcy proceedings, Plaintiffs contend "State Farm is estopped from making such an argument now." (*Id.*)

In the denial letter, State Farm informed Mrs. Naff that the claim was being denied because the company determined "[she] intentionally concealed and/or misrepresented material facts when presenting [the] claim to State Farm," and she "did not comply with [the] duties after a loss as described in the Homeowners Policy"—which included providing documentation in support of the claim. (Doc. 31-6 at 99- 100) State Farm indicated in the letter that it was providing examples of the misrepresentations it believed Mrs. Naff made but the list was "not meant to be an exhaustive description of each and every concealment and/or misrepresentation you made." (*Id.* at 99, 100)

Plaintiffs have not identified any cases in which the insurance company is obligated to identify *every* fact to support its position that a particular exclusion applied. More importantly, Plaintiffs do not allege they relied to their detriment on State Farm's failure to identify the bankruptcy proceedings as an additional fact upon which the Concealment or Fraud exclusion was based. Consequently, the Court declines to invoke the doctrine of estoppel.

### B.   Judicial Estoppel[6]

Defendant argues Plaintiffs are "judicially estopped" from disputing the value of items that were not disclosed in the bankruptcy proceeding and from arguing the items were undervalued. (Doc.

---

[5] The letter notes that Mrs. Naff admitted that "certain documents and records were placed in an off-site storage unit following the fire at your home. You also testified Mr. Naff discarded the stored records in August 2013. Rather than provide documentation in support of your loss, you threw your records away." (Doc. 31-6 at 100)

[6] In seeking summary judgment, Defendant raises the affirmative defense of judicial estoppel for the first time in this action. *See Love v. Tyson Foods, Inc.*, 677 F.3d 258, 267 (5th Cir. 2012) (holding judicial estoppel is an affirmative defense); *Coble v. DeRosia*, 823 F.Supp.2d 1048, 1050 (E.D. Cal. 2011) (same). Plaintiff objects that Defendant "waived any claim of estoppel by not pleading it" as an affirmative defense in the Answer. (Doc. 32 at 18-19, emphasis omitted) However, as Defendant observes, the Ninth Circuit determined "[i]n the absence of a showing of prejudice, an affirmative defense may be raised for the first time at summary judgment." *Camarillo v. McCarthy*, 998 F.2d 638, 639 (9th Cir.1993) (citing *Rivera v. Anaya*, 726 F.2d 564, 566 (9th Cir.1984)). Here, Plaintiffs do not contend they have been prejudiced. (*See* Doc. 32 at 18-19) Accordingly, the Court finds Defendant may rely on this affirmative defense in its motion for summary judgment.

31-3 at 11-12) "Judicial estoppel is an equitable doctrine that precludes a party from gaining an advantage by asserting one position, and then later seeking an advantage by taking a clearly inconsistent position." *Hamilton v. State Farm Fire & Cas. Co*., 270 F.3d 778, 782 (9th Cir. 2001). The purpose of the doctrine "is to protect the integrity of the judicial process… by prohibiting parties from deliberately changing positions according to the exigencies of the moment." *New Hampshire v. Maine*, 532 U.S. 742, 750 (2001) (internal quotation marks, citation omitted).

The Supreme Court observed the circumstances under which judicial estoppel may be invoked "are probably not reducible to any general formulation." *New Hampshire*, 532 U.S. at 750. However, the Court identified several factors that may be considered to determine whether the doctrine should be applied:

> First, a party's later position must be clearly inconsistent with its earlier position. [Citations.] Second, courts regularly inquire whether the party has succeeded in persuading a court to accept that party's earlier position, so that judicial acceptance of an inconsistent position in a later proceeding would create the perception that either the first or the second court was misled [citation]. Absent success in a prior proceeding, a party's later inconsistent position introduces no risk of inconsistent court determinations, [citation], and thus poses little threat to judicial integrity. [Citations.] A third consideration is whether the party seeking to assert an inconsistent position would derive an unfair advantage or impose an unfair detriment on the opposing party if not estopped.

*Id.*, 531 U.S. at 750-51 (citations and internal quotation marks omitted); *see also Ah Quin v. County of Kauai DOT,* 733 F.3d 267, 270 (9th Cir. 2013) (same).

Significantly, a party's position must be "'tantamount to a knowing misrepresentation to or even fraud on the court'" for the doctrine to be invoked. *Johnson v. State, Oregon Dep't of Human Res., Rehab. Div.,* 141 F.3d 1361, 1367 (9th Cir. 1998) (quoting *Ryan Operations G.P. v. Santiam-Midwest Lumber Co*., 81 F.3d 355, 362-63 (3d Cir. 1996)). Consequently, the Ninth Circuit found that "[i]f incompatible positions are based not on chicanery, but only on inadvertence or mistake, judicial estoppel does not apply." *Id.* (citing *In re Corey*, 892 F.2d 829, 836 (9th Cir. 1989)).

Defendant contends the Naffs should be "judicially estopped from disputing that they only had $6,000 in personal property as of July 30, 2010." (Doc. 31-3 at 13) Defendant argues the fact that Plaintiffs disclosed $6,000 during the bankruptcy proceedings is incompatible with the inventories that "reflect goods with value of more than three or four times that claimed on the bankruptcy petition."

1   (Doc. 31-1 at 13)  Notably, however, Plaintiffs were asked to disclose the "current value" of the

2   property during the bankruptcy proceedings (Doc. 31-4 at 6) while State Farm's inventory forms asked

3   them for their opinions of the "replacement cost" (*see, e.g.* Doc. 31-5 at 84).

4         Moreover, Mrs. Naff attests that, in fact, of the items listed on the May 2013 inventory were

5   purchased after the bankruptcy and many items belonged to her children rather than to her or Mr. Naff.

6   (Doc. 32-4 at 5, 8)  When these items are deducted, she asserts that the true value of the household

7   items belonging to her and her husband was $5,525.  *Id*.  As to the August 2013 inventory, Mrs. Naff

8   claims only $5,840 worth of the items belonged to her and Mr. Naff at the time of the bankruptcy

9   proceedings.  *Id*. at 5, 10.

10        In any event, undoubtedly, the "current value" of the items disclosed in the bankruptcy

11  proceeding may be different from the "replacement cost" of the property.  In *State Farm Fire &*

12  *Casualty Co. v. Billingsley,* the court explained, "a $1,000 kitchen set may have been worth only $100

13  on the market but can only be *replaced* for $ 1,000." *Id.*, 2010 U.S. Dist. LEXIS 37112 at *25-26 (S.D.

14  Ala. Apr. 14, 2010); *Hoffman v. Foremost Signature Ins. Co.*, 989 F.Supp.2d 1070, 1079 (D. Or. 2013),

15  ["'[v]aluation in bankruptcy cases is far different than determining replacement value for purposes of

16  insurance coverage" and "[i]t is the rare case where debtor schedules more than $5,000 in household

17  furnishings, and often the number is closer to $3,000.'"]; *Brown v. Allstate Prop. & Cas. Ins. Co.* 2015

18  WL 1646684, at *2 (E.D. Mich. Apr. 14, 2015) [inherent difference in valuation methods between

19  bankruptcy petitions and insurance claims].

20        Similarly, though the Plaintiffs reported the "current value" of their property as $6,000 in the

21  bankruptcy proceedings in 2010, this is not *necessarily* "incompatible" with a replacement value of

22  $17,695—the value of the goods it is undisputed that that was reported by Plaintiffs in August 2013.

23  Likewise, Mrs. Naff attests that, in fact, the household items she and Mr. Naff owned at the time of the

24  bankruptcy were roughly equivalent to that reported in the petition.[7]  (Doc. 32-4 at 5, 8, 10)  In light of

25  the Mrs. Naff's explanations, the Court is compelled to deny the defendant summary judgment on the

---

[7] The Court agrees with the defendant (Doc. 33 at 13) that the May 2013 "pre-bankruptcy items" inventory list (Doc. 32-4 at 8) prepared by Mrs. Naff does not appear to fully account for items that she agrees they owned at the time of the bankruptcy and are reflected on the August 2013 inventory (Doc. 31-6 at 6-97).  However, while curious, does not change the Court's analysis for purposes of this motion.

topic of judicial estoppel. *See Johnson,* 141 F.3d at 1367; *Billingsley*, 2010 U.S. Dist. LEXIS 37112 at *25-26.

   C. **Material Misrepresentation and Breach of Contract and Breach of the Covenant of Good Faith and Fair Dealing**

  If an insurance policy is rendered void by the insureds, there can be no liability for breach of contract or for breach f the covenant of good faith and fair dealing. To demonstrate an insurance policy is void under California law based upon a misrepresentation (*Liberty Mutual Fire Ins. Co. v. Scott*, 486 F.3d 418, 423 (8th Cir. 2007)), the false statement must relate to a material matter, must be made despite knowledge of its falsity and with the intent to deceive or defraud the insurer. *Ram v. Infinity Select Ins.*, 807 F.Supp.2d 843, 853 (N.D. Cal. 2011). "The intent to defraud is necessarily implied 'when the misrepresentation is material and the insured wilfully makes it with knowledge of its falsity.'" *Id.* quoting *Cummings v. Fire Ins. Exch.*, 202 Cal.App.3d 1407, 1418 (1988). A misrepresentation is material if it relates to the insurer's investigation to determine its obligations under the contract. *Leasure v. MSI Ins. Co.*, 65 Cal.App.4th 244, 248 (1998). Deliberately overstating the value of the lost property is a material misrepresentation. *Hyland v. Millers Nat. Ins. Co.*, 91 F.2d 735, 743 (9th Cir. 1937). Courts may infer that the insured made a material misrepresentation of the value of the insurance claim if the insured placed a value on the same property in a bankruptcy filing contemporaneously filed that leads to no other reasonable explanation. *Liberty*, at 423.

  In each of the cases cited by the defendant[8], courts agree that insureds who make relatively large insurance claims soon after filing bankruptcy petitions in which they claim the value of the same property is small, commit a material misrepresentation. However, in each of these cases, the insureds offered no evidence to support their claims that the values could be reconciled. *Liberty Mutual* at 422-423; *Neidenbach*, at-933; *Mathes* v. Mid-Century Ins. Co. 2008 WL 249744 at *3 (E.D. Mo. 2008); *Sexton v. State Farm Fire & Casualty Co.*, 2011 WL 2516742, at *4-5 (E.D. Tenn. June 23, 2011); *Geller v. Am. Ins. Co.*, 2014 WL 920740, at *3 (E.D. Mich. Mar. 10, 2014); *Perovich v. Glens Falls Ins. Co.*, 401 F.2d 145, 146 (9th Cir. 1968).

---

[8] Although in *Brown v. Allstate Prop. & Cas. Ins. Co.* 2015 WL 1646684, at *2 (E.D. Mich. Apr. 14, 2015), another case cited by the defendant, the court refused to find judicial estoppel because of the evidence that explained the differences in the valuation methods.

Nevertheless, Defendant argues that based upon the Naffs' representation to the Bankruptcy Court about the value of their personal property and the value the Naffs give to these items in the inventories[9], the Court should conclude that the Naffs made a material misrepresentation sufficient to justify a determination that they voided the homeowner's policy. On this basis, Defendant argues it cannot be held liable for breach of contract. (Doc. 31-1 at 13-18)

As noted above, at the time the Naffs filed bankruptcy in 2010, they claimed only $6,000 in household goods. In their May 2013 inventory, they claimed household goods that they had owned for at least three years in the amount of $25,920. (JSF 14-40)  In their August 2013 inventory, they valued these items at $17,695. (JSF 47-54, 60-66, 68-76, 78-84)

As discussed above, in opposition to this motion, Mrs. Naff filed a declaration that explained these discrepancies. Mrs. Naff indicates that when preparing the first inventory, she was not given any "meaningful direction" as to how to fill out the form and that she "did the best [she] could based on [her] memory" of the items that had been in the home at the time of the fire, five months before. (Doc. 32-4 at 3. She reports that the State Farm representative told her the list "didnt [sic] have to be perfect and that I should just get it to them." *Id.*

Mrs. Naff declares that in the August 2013 inventory, she revised it to remove some items that she found in storage, to combine some items and to correct some information from the earlier inventory that was in error due to not having proper instructions as to how to complete the form. (Doc. 32-4 at 4) In completing the inventory, Mrs. Naff declares that when an item was 2½ years old, for example, she rounded up to indicate the item was three years old. *Id.* She indicates that she did not know that describing the age of the items as "3 years, rather than stating that they were 2 years and however many months, [would have] any adverse consequence to me whatsoever." *Id*. at 4-5. She explains that she believed that erring on the side of caution, by describing something as older than it was—given that this, generally, would reduce an item's replacement value—would not be considered wrong. *Id*. She reports further that she felt she was being harassed by State Farm so she adopted this rounding

---

[9] Defendant relies upon the items that Mrs. Naff described as at least three years old at the time of the fire which, impliedly, it that which constituted the household property at the time of the bankruptcy. This tactical decision, clearly, was the defendant's to make but, seemingly

methodology to avoid further harassment. *Id*. Also, as discussed above, she reports that, indeed, the value of her household items at the time of the bankruptcy was roughly equivalent to that reported in the petition. (Doc. 32-4 at 5, 8, 10)

Notably, Defendant expressly excludes from the Court's analysis whether "the representations made about items less than 3 years old were false" when determining whether the plaintiffs made a material misrepresentation. (Doc. 31-1 at 16) Rather, it asks the Court to consider "solely the direct evidence of items claimed to be over 3 years old and assigned values in excess of what was claimed on the bankruptcy petition" when evaluating this argument. With this parameter, the Court must conclude, as it did in its analysis above, that the defendant has not shown there exists a lack of genuine dispute of material fact.

Because the defendant relies upon this same argument to demonstrate that it is entitled to summary judgment on the claim for breach of the covenant of good faith and fair dealing, for the same reasons, the Court must deny summary judgment on that claim as well.

## V.     Conclusion and Order

Defendant fails to demonstrate the doctrine of judicial estoppel should be invoked, and has not carried the burden to show an absence of a genuine issue of material fact related to Plaintiffs' claims. *See Celotex*, 477 U.S. at 323. A jury must make credibility determinations and resolve the conflicts between the evidence. *See T.W. Electrical Serv., Inc.*, 809 F.2d at 630.

Based upon the foregoing, the Court **ORDERS** that Defendants' motion for summary judgment (Doc. 31) is **DENIED**.

IT IS SO ORDERED.

Dated:   **July 3, 2016**                             **/s/ Jennifer L. Thurston**
                                                                UNITED STATES MAGISTRATE JUDGE