UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| HALONDA NAFF, et al., | Case No.: 1:15-cv-00515 - JLT |
| Plaintiffs, | ORDER ON THE MOTIONS IN LIMINE |
| v. | (Docs. 41, 42) |
| STATE FARM GENERAL INSURANCE COMPANY, | |
| Defendant. | |
| AND RELATED CROSS-CLAIMS | |

Halonda and Jarvis Naff contend Defendant State Farm General Insurance Company wrongfully cancelled their insurance policy and denied their claim following a house fire that caused the loss of personal property. State Farm argues its actions were proper and seeks a declaration of rights in its counterclaim.

**II.     Legal Standards Governing Motions in Limine**

"Although the Federal Rules of Evidence do not explicitly authorize in limine rulings, the practice has developed pursuant to the district court's inherent authority to manage the course of trials." Luce v. United States, 469 U.S. 38, 40 n. 2 (1984). The Ninth Circuit explained motions in limine "allow parties to resolve evidentiary disputes ahead of trial, without first having to present potentially prejudicial evidence in front of a jury." Brodit v. Cabra, 350 F.3d 985, 1004-05 (9th Cir. 2003)

1

(citations omitted).

Importantly, motions in limine seeking the exclusion of broad categories of evidence are disfavored. See Sperberg v. Goodyear Tire and Rubber Co., 519 F.2d 708, 712 (6th Cir. 1975). The Court "is almost always better situated during the actual trial to assess the value and utility of evidence." Wilkins v. Kmart Corp., 487 F. Supp. 2d 1216, 1218 (D. Kan. 2007). The Sixth Circuit explained, "[A] better practice is to deal with questions of admissibility of evidence as they arise [in trial]" as opposed to ruling on a motion in limine. Sperberg, 519 F.2d at 712. Nevertheless, motions in limine are "an important tool available to the trial judge to ensure the expeditious and evenhanded management of the trial proceedings." Jonasson v. Lutheran Child & Family Services, 115 F.3d 436, 440 (7th Cir. 1997).

"[A] motion in limine should not be used to resolve factual disputes or weigh evidence," C & E Services, Inc. v. Ashland Inc., 539 F. Supp. 2d 316, 323 (D. D.C. 2008), because that is the province of the jury. See Reeves v. Sanderson Plumbing Products, 530 U.S. 133, 150 (2000).

Moreover, the rulings on the motions in limine made here does not preclude either party from raising the admissibility of the evidence discussed here, if the evidence adduced at trial demonstrates a change of circumstances that would make the evidence admissible. In this event, the proponent of the evidence **SHALL** raise the issue outside the presence of the jury. Finally, the rulings made here are binding on all parties and not merely on the moving party.

**II.     Plaintiff's Motions in Limine**

**A.     Plaintiffs' Motion in Limine #1 to exclude evidence and argument that their claim was denied on any basis other than the three set forth in the December 5, 2014 denial letter**

The plaintiffs argue that in its letter, dated December 5, 2014, State Farm reported that it was denying the Naffs' insurance claim for three reasons: "(1) the alleged claim for the patio cover; (2) the discrepancies in the inventories; and (3) the failure to provide requested documentation." (Doc. 41 at 13) The only specific evidence raised in the motion relate to the fact that the defendant did not mention their prior bankruptcy action. Id. The plaintiffs rely on 10 CCR § 2695.7(b)(1) which reads, "Where an insurer denies or rejects a first party claim, in whole or in part, it shall do so in writing and shall provide to the claimant a statement listing all bases for such rejection or denial and the factual and legal

bases for each reason given for such rejection or denial which is then within the insurer's knowledge." On this basis, the plaintiffs argue that State Farm should not be permitted to introduce evidence that would support other reasons. Id.

The defendant opposes the motion and notes that it did not intentionally waive any right to raise other examples of misrepresentation made by the plaintiffs merely because the denial letter failed to list every factual basis to support the exclusions upon which it relied in cancelling the policy and denying the claim. (Doc. 44 at 9-14)  The defendant notes the Court decided this issue recently when addressing objections made to its evidence in support to the motion for summary judgment. Id.  The Court agrees and sees no basis to retreat from this ruling. (Doc. 38 at 9-11)  Thus, the motion is **DENIED**.

**B.     Plaintiffs' Motion in Limine #2 to exclude evidence related to their 1999 bankruptcy action**

The plaintiffs argue that evidence related to their 1999 bankruptcy action—filed more than a decade before the fire at issue—should be excluded. (Doc. 41 at 14-15)  The defendant seems to assert that the only use it would have for the 1999 bankruptcy petition is to counter any claim on the plaintiffs' that errors made in the 2010 bankruptcy petition were made as a result of confusion. (Doc. 44 at 15) Because they had been through the process before, the defendants assert that these documents would demonstrate an absence of mistake. Fed. R. Civ.P. 404(b).  The plaintiffs counter that they have never claimed that the entries in the 2010 bankruptcy petition were made as a result of a mistake.

However, because the *information* contained in the petition may be impeaching, the motion is **DENIED**.  However, absent a change in circumstances, the petition itself will not be admitted.

**C.     Plaintiffs' Motion in Limine #3 to exclude evidence related to their 2010 bankruptcy action**

The plaintiffs argue that evidence related to their 2010 bankruptcy filing should not be permitted to be introduced. (Doc. 41 at 15-16)  The plaintiffs assert that the inventory completed by Sharon Endsley makes clear that the items she listed on the inventory were in the house at the time of the fire. Id. at 16.  They argue also reiterate the arguments raised in their motion in limine number 1. Id.

The defendants oppose the motion and assert—much like they did in their motion for summary

judgment—that this evidence demonstrates a material misrepresentation which was the basis for voiding the policy. (Doc. 44 at 15)  Thus, for the reasons set forth above—which includes the Court's analysis in its order on the motion for summary judgment (Doc. 38 at 9-11)--the motion is **DENIED**.

To be explicitly clear, the Court finds that the specifics as to how the plaintiffs' were able to furnish their home with the items observed by Ms. Endsley is only marginally relevant, the defendant is permitted a **few** questions only as to the sources of income for the Naffs at the time of the bankruptcy and after for the purpose of laying a foundation for argument at the close of the case. The Court will judge any questions beyond a **few** to be collateral to the central questions presented by this litigation.

### D.   Plaintiffs' Motion in Limine #4 to exclude evidence related to their being the victims of a drive-by shooting

On October 8, 2014, about nine months after their home burned, Mr. and Mrs. Naff were the victims of a drive-by shooting. (Doc. 41 at 17.)  The plaintiffs argue that the defendant would offer this evidence in an attempt to make them appear as if they are "gang members or thugs" to support the position that they would, therefore, made a false claim. Id.  The plaintiffs assert that this evidence would inflame the jurors and would paint the plaintiff's in an unflattering light. Id. at 17.

The defendant opposes this motion and notes that the fact that the Naffs were the victims of a violent crime "casts no aspersions" on them. (Doc. 44 at 24-25)  Rather, the defendant notes that the evidence of the shooting provides an alternate explanation for the emotional distress which the plaintiffs' claim they suffered as a result of the denial of their claim. Id.

Notably, the complaint indicates that,

> Since the claim was filed, Defendants have engaged in an egregious course of repeated delay tactics, harassment, defamatory accusations, and negligent and intentional acts in the handling of the claims which has caused and continues to cause Plaintiffs significant harm and damages. As a result, the Plaintiffs have experienced a host of problems, including, without limitation, the loss of virtually all of their personal property, incurring significant expense in having to replace items that are necessary and ordinary for day to day living, the inability to replace all of the items they lost, and significant physical and emotional problems.

(Doc. 1-2 at 7)  The complaint also lists a number of wrongful acts the plaintiffs contend the defendant did that caused them harm. Id. at 7, 8-9.  They assert that these acts caused them emotional harm, among other damage. Id. at 9, 11, 12.  Based upon these allegations, it appears that the plaintiffs claim

that the emotional distress they suffered as a result of the defendant's conduct began at the time they filed the claim, rather than from the time that the claim was denied in December 2014.

The defendant argues that the plaintiffs' case in chief requires them to show that the emotional distress suffered by the Naffs was caused by the defendant's action. (Doc. 44 at 17-18) Likewise, the defendants argue they are entitled to demonstrate that whatever emotional distress the Naffs suffered was due to events unrelated to its actions. Id. The defendant cites to Blake v. Aetna Life Ins. Co., 99 Cal.App.3d 901, 925 (1979). In Blake, the Court held, "In the customary "bad faith" case, the essence of the plaintiff's emotional distress is the anxiety arising from the financial deprivation traceable directly to nonpayment of the claim." Id. at 924-925; Othman v. Globe Indem. Co., 759 F.2d 1458, 1468 (9th Cir. 1985) overruled on other grounds by Bryant v. Ford Motor Co., 832 F.2d 1080 (9th Cir. 1987) overruled by Bryant v. Ford Motor Co., 844 F.2d 602 (9th Cir. 1987).

The Court agrees that the fact that the plaintiffs were shot in October 2014 may be an alternative cause for the plaintiffs' emotional distress. Thus, the motion is **DENIED**.

E.   **Plaintiffs' Motion in Limine #5 to exclude evidence related to an incident of domestic violence**

On January 25, 2013, a month after the fire, the plaintiffs were living in a hotel. (Doc. 44 at 27) While there, the Naffs engaged in an incident of domestic violence, which caused Mrs. Naff to summon police. Id. Though charges were filed against Mr. Naff, they were ultimately dismissed. (Doc. 41 at 17)

The plaintiffs argue this evidence should not be admitted because it is irrelevant but, even if there is any probative value, it is outweighed by its prejudicial effect. (Doc. 41 at 17) The defendant argues this evidence is directly relevant to the plaintiffs' claim that the defendant's conduct caused them to suffer marital strife. (Doc. 44 at 27) In addition, the defendant asserts that the evidence should be allowed because it reveals alternate bases for the marital strife. Id.

It appears that the Naffs *have* claimed that the distress they suffered as a result of the conduct of the defendant caused them to suffer marital discord. Though the Naffs clarified at the hearing that they do not claim the January 25, 2013 incident resulted from this stress, the defendant is entitled to present this evidence, which could demonstrate that whatever marital problems the couple suffered

were unrelated to the fire and, hence, negating a portion of the emotional distress damage claim.  Thus, the motion is **DENIED**.

### F. Plaintiffs' Motion in Limine #6 to exclude evidence related to criminal charges against any party or witness

The plaintiffs seek to exclude evidence related to criminal charges brought in the past or are pending against any party or witness.  (Doc. 41 at 17-18)  They argue that in 1989 and 2004, Mr. Naff was charged with crimes, though both charges were dismissed.  Id.  The rely upon Fed.R.Evid. 404.

The defendants argue that evidence of charges raised after the fire, even if the criminal complaints were later dismissed, are relevant to show alternate causes of the emotional distress.  (Doc. 44 at 28-29)  They do not claim that charges brought before the fire as to the plaintiffs or charges brought against witnesses at any time are admissible.  The Court agrees and, to this extent, the motion is **GRANTED**.

On the other hand, as discussed above evidence about what occurred on January 25, 2013 may be admissible depending upon the showing made. Thus, to this extent, the motion is **DENIED**.

### G. Plaintiffs' Motion in Limine #7 to exclude evidence related to criminal convictions against any party or witness

The plaintiffs seek to exclude evidence related to evidence convictions suffered by Mr. Naff and the plaintiffs' son, Jeremy King.  (Doc. 41 at 19-20)

Whether evidence of a conviction will be admitted is governed by Federal Rules of Evidence 609.  Evidence must be admitted, subject to evaluation under Fed. R. Evid. 403, in civil cases in which the witness is not the defendant and where the conviction was punishable by more than one year in prison. Fed. R. Evid. 609(a)(1)(A).  Situations in which the conviction is more than ten years old or where more than ten years have passed since the time the witness was released from confinement on the charge, whichever is later, pose closer calls.  In these situations, the conviction may not be admitted unless its probative value is outweighed by its prejudicial effect. Fed. R. Evid. 609(b).

As to Mr. Naff, the plaintiffs seek to exclude evidence related felony convictions Mr. Naff suffered more than ten years ago.  (Doc. 41 at 19-20)  The defendants report that Mr. Naff has suffered three felony convictions in 1990, 1993 and 2004.  (Doc. 44 at 30)  The 1990 convictions related to

6

possession of drugs and robbery; the 1993 conviction was for possession of drugs; and, the 2004 conviction was for being a felon in possession of a firearm. Id. The defendants argue that the nature of the offenses and the fact that the final conviction occurred less than ten years before the fire and the time when Mr. Naff gave his recorded statement means that the evidence should be admitted.[1]  Id.

The defendants argue these offenses bear on Mr. Naff's credibility. (Doc. 44 at 30-31)  In particular they rely upon the convictions for robbery and for possessing a gun. Id. The crime of robbery bears on a witness' veracity. United States v. Givens, 767 F.2d 574, 580 (9th Cir. 1985) ["We have previously held that prior convictions for robbery are probative of veracity.]  However, this conviction is now 26 years old. It is so remote in time as to provide slight, if any, probative value. Thus, the motion is **GRANTED** as to this conviction under Fed.R.Evid. 403.

On the other hand, the conviction for being a felon in possession of a gun is much more recent and is a crime of moral turpitude. People v. Robinson, 199 Cal.App.4th 707, 714 (2011). The only probative value from this evidence is that it is impeaching. However, the credibility of the plaintiffs is significantly important in this case. Indeed, the entire reason the defendant refused to pay for the losses is its position that the plaintiffs have lied about the value of their possessions. The Court does not find that allowing the defendants to introduce *only* the fact that Mr. Naff suffered a felony conviction in 2004 would result in unfair prejudice, confusion, undue delay or waste of time, or would require cumulative evidence. However, at the hearing, the plaintiffs indicated a preference to be able to explain the circumstances of the conviction. Thus, the motion is **DENIED** but, unless the plaintiffs open the door to the evidence about the name of the offense, the Penal Code section or other details about the crime, the defendant shall limit the evidence to only that Mr. Naff suffered a criminal conviction.

As to Mr. King, at issue is the conviction Mr. King suffered in 2011 for participation in a criminal street gang. (Doc. 44 at 33-34)  The plaintiffs argue that, though this conviction would be admissible otherwise to attack this witness' character for truthfulness, the slight probative value is outweighed by its unfair prejudicial effect.

---

[1] The ten-year date runs from the date the witness takes the stand. Thus, the fact that the conviction occurred less than ten years before the fire or before the recorded statement is of no moment. United States v. Jefferson, 925 F.2d 1242, 1256 (10th Cir, 1991).

7

The defendants oppose the motion and report (Doc. 44 at 32) that Mr. King was convicted of violating California Penal Code § 186.22 which provides, "Any person who actively participates in any criminal street gang with knowledge that its members engage in or have engaged in a pattern of criminal gang activity, and who willfully promotes, furthers, or assists in any felonious criminal conduct by members of that gang, shall be punished by imprisonment in a county jail for a period not to exceed one year, or by imprisonment in the state prison for 16 months, or two or three years." The statute also requires a court to impose a sentence enhancement if the defendant commits a crime to benefit a criminal street gang. Cal.Pen.Code § 186.22(b).

The defendants argue that this conviction is a crime of moral turpitude and is admissible to demonstrate Mr. King's lack of credibility. The defendants do not cite any authority that conviction of this crime is, indeed, a crime of moral turpitude.

> "[A] crime involving moral turpitude is generally a crime that (1) is vile, base, or depraved and (2) violates accepted moral standards." Ceron, 747 F.3d at 779–80 (internal quotation marks omitted). "Not all serious crimes meet this standard.... To be considered a crime of moral turpitude, a crime other than fraud must be more than serious; it must offend the most fundamental moral values of society, or as some would say, shock the public conscience." Castrijon–Garcia, 704 F.3d at 1212 (quoting Navarro–Lopez, 503 F.3d at 1074–75 (en banc) (Reinhardt, J., concurring for the majority) (internal citations, quotation marks, and alterations omitted)). This high standard is necessary to preserve the distinction between crime in general and crimes involving moral turpitude.

Hernandez-Gonzalez v. Holder, 778 F.3d 793, 801 (9th Cir. 2015). "Thus, '[o]nly truly unconscionable conduct surpasses the threshold of moral turpitude.' Robles–Urrea v. Holder, 678 F.3d 702, 708 (9th Cir.2012)." Hernandez-Gonzalez, 778 F.3d at 802.

In Hernandez-Gonzalez, 778 F.3d at 802, the Ninth Circuit considered whether a crime which did not involve moral turpitude becomes one if the defendant is convicted also of the criminal street gang enhancement. The Court rejected this and held,

> Although the gang enhancement statute has a specific intent element, it does not specify what type of "criminal conduct by gang members" a defendant must be intending to promote. Cal.Penal Code § 186.22(b)(1). The prosecution need not "establish specific crimes the defendant intended to assist his fellow gang members in committing," and, in fact, the criminal conduct the defendant intends to promote need not be "distinct from the charged offense." Albillar, 51 Cal.4th at 66, 119 Cal.Rptr.3d 415, 244 P.3d 1062. There is nothing in the statute that would prevent it from applying to run-of-the-mill criminal conduct. **Of course, all gang-related criminal conduct is, at some level, both serious and morally questionable, but not all gang-related criminal conduct necessarily involves grave acts of baseness or depravity.**

8

Id. at 802-803, emphasis added.  The Court continued, "The gang enhancement does not provide a sufficient "evil intent" to transform an otherwise non-turpitudinous crime into one involving moral turpitude. Stated differently, the specific intent required under the statute to further criminal conduct by gang members does not necessarily establish the evil intent required to make the offense turpitudinous." Id. at 804.  If a crime does not become one of moral turpitude when it is committed to benefit a gang, it follows that membership in a gang without an underlying crime, cannot be a crime of moral turpitude.

In any event, the conviction is less than ten years old and, is admissible under Rule 609(a).  As stated above, the credibility of the plaintiffs and those offering supporting evidence is keenly important in this case. Thus, the Court does not find that the probative, impeaching value of the conviction is outweighed by its unfair prejudicial effect especially.  Once again, at the hearing, the plaintiffs indicated a preference to be able to explain the circumstances of the conviction. Thus, the motion is **DENIED** but, unless the plaintiffs open the door to the evidence about the name of the offense, the Penal Code section or other details about the crime, the defendant shall limit the evidence to only that Mr. King suffered a criminal conviction.

**III.     Defendant's Motions in Limine**

**A.     Defendant's Motion in Limine #1 to bifurcate the issue of liability from the issues of punitive damages, attorneys' fees and costs**

The parties agree that the issue of the amount of punitive damages should be determined in a second phase and that fees and costs will be addressed in post-trial motions.  Thus, the motion is **GRANTED**.

**B.     Defendant's Motion in Limine #2 to exclude evidence or argument that the defendant acted with a racial animus**

The parties agree that there will be no evidence or argument that the defendant's conduct was motivated by race. Thus, the motion is **GRANTED**.

**C.     Defendant's Motion in Limine #3 to exclude evidence or argument related to other cases in which defendant's attorney, Mr. Park, was counsel or a witness**

The parties there will be no evidence presented related to other litigation in which Mr. Park was

involved. Thus, the motion is **GRANTED**.

### D. Defendant's Motion in Limine #4 to preclude speaking objections

The parties agree they will not make speaking objections. Thus, the motion is **GRANTED** and no attorney may make speaking objections.

### E. Defendant's Motion in Limine #5 to preclude evidence related to the conduct of this litigation as evidence of bad faith

The defendant argues that the evidence related to the conduct of this litigation and, specifically, the conduct of its counsel, should not be admitted to demonstrate its bad faith. (Doc. 42 at 29)

The plaintiffs note that evidence of bad faith may arise during litigation and cite cases to this effect. (Doc. 48 at 8) However, cases in California on this topic are inconsistent. For example, Palmer v. Ted Stevens Honda, Inc., 193 Cal.App.3d 530, 538-539 (Ct. App. 1987), distinguished White v. Western Title Ins. Co., 40 Cal.3d 870 (1985), because it was based upon an ongoing contractual relationship between the insured and the insurer. Important for this Court, the Ninth Circuit has relied upon Palmer to hold that activities during litigation by the insurer's attorneys are not evidence of bad faith by the insurer. Oki Am., Inc. v. Microtech Int'l, Inc., 872 F.2d 312, 314 (9th Cir. 1989).

Despite this, the plaintiffs argue that counsel for the defendant conducted the litigation in a way to "uncover any possible dirt on the Plaintiffs, and none of which was done prior to denying the claim and voiding the policy." Id. at 7. The Court has no doubt this is true because much of the discovery—specifically that related to other causes for the emotional distress claimed by the plaintiffs' in this action—could not have been investigated before the filing of the lawsuit. Though possibly painful or embarrassing, discovery on these topics is not evidence of State Farm's bad faith; it is evidence of the attorney's proper advocacy. Thus, the Court disagrees that zealous—possibly, even, overly zealous—advocacy by the insurance company's contract lawyer in the pursuit of discovery is evidence of bad faith for purposes of the tort brought by the plaintiffs. Krisa v. Equitable Life Assur. Soc., 109 F.Supp.2d 316, 321 (M.D. Pa. 2000) [Discovery abuses do not constitute evidence of bad faith by the insurer.] Likewise, the exercise of the right to seek a declaration of rights by the insurance company is not evidence of bad faith. Atlas Assurance Co. v. McCombs Corp., 146 Cal.App.3d 135, 150 (Ct. App. 1983) ["[T]he mere filing of an action to declare the insurer's rights and duties relative to an insurance

policy cannot form the basis of breach of the duty of good faith and fair dealing."].

In <u>De Anza Santa Cruz Mobile Estates Homeowners Assn. v. De Anza Santa Cruz Mobile Estates</u>, 94 Cal.App.4th 890, 918 (2001), the court considered whether litigation tactics could be considered by a jury in evaluating a punitive damages claim. The court held,

> The question of a defendant's motivation and intent involves credibility determinations and other factual resolutions well within the province of the jury. However, we find that the evidence and argument in this case often strayed into areas improper for determination by a jury. A lay jury is not well-suited to evaluate the relative merits of a legal position taken by a party. (<u>Coleman v. Gulf Ins. Group</u> (1986) 41 Cal.3d 782, 226 Cal.Rptr. 90, 718 P.2d 77; <u>Sheldon Appel Co. v. Albert & Oliker</u> (1989) 47 Cal.3d 863, 875, 254 Cal.Rptr. 336, 765 P.2d 498; <u>In re Marriage of Flaherty</u> (1982) 31 Cal.3d 637, 183 Cal.Rptr. 508, 646 P.2d 179.) Furthermore, due process considerations are implicated to the extent that tort damages are based on evidence that a defendant filed motions, appeals and other legal proceedings during the course of litigation, or opposed motions filed by the other party. (See, e.g., <u>Pacific Gas & Electric Co. v. Bear Stearns & Co.</u> (1990) 50 Cal.3d 1118, 270 Cal.Rptr. 1, 791 P.2d 587.) Pursuing authorized forms of relief before courts or other governmental tribunals is a protected right and cannot be the basis for tort liability, except in a properly pleaded action for malicious prosecution. (<u>Ibid</u>.; <u>California Teachers Assn. v. State of California</u> (1999) 20 Cal.4th 327, 84 Cal.Rptr.2d 425, 975 P.2d 622.) And just as there is no tort of " 'malicious defense' " (<u>California Physicians' Service v. Superior Court</u> (1992) 9 Cal.App.4th 1321, 1325, 12 Cal.Rptr.2d 95) arising from a defendant's conduct in defending a lawsuit, or "malicious filing of an appeal" (<u>Coleman v. Gulf Ins. Group</u>, <u>supra</u>, 41 Cal.3d at p. 793, 226 Cal.Rptr. 90, 718 P.2d 77) for filing an appeal in bad faith, a defendant's trial tactics and litigation conduct may not be used to impose punitive damages in a tort action. (<u>Palmer v. Ted Stevens Honda, Inc.</u> (1987) 193 Cal.App.3d 530, 238 Cal.Rptr. 363; accord <u>California Physicians' Service v. Superior Court,</u> <u>supra</u>, 9 Cal.App.4th at p. 1325, 12 Cal.Rptr.2d 95.)

The Court agrees that what is hardball litigation could appear to a lay juror to be outrageous. Jurors simply are not equipped to understand the proper confines of litigation efforts often involves conduct that is not always acceptable in polite society. Thus, though the Court does not exclude the possibility that there could be conduct of which it is not aware that *could* be admissible as evidence of the defendant's bad faith, the discovery efforts by counsel—even if rude, or seeming rude, or harassing or seeming harassing—will not be admitted at trial. Thus, the motion is **GRANTED**. If there is specific information, that does not include discovery efforts by Mr. Park or his demeanor during the litigation, that the plaintiffs believe bear on the question of bad faith, they SHALL present the evidence to the Court outside the presence of the jury before using it at trial.

F. **Defendant's Motion in Limine #6 to preclude mention that the plaintiffs have had State Farm Insurance for 17 years**

The defendant notes that the plaintiffs held homeowner's insurance through it only for two years before the fire. (Doc. 42 at 35) The plaintiffs had other types of insurance from other of the State Farm companies over the years but not coverage on their home. Id. Thus, the defendants argue that describing themselves as having State Farm insurance for 17 years is misleading. Id. The defendant provides a copy of the underwriting file showing the application for homeowner's insurance requesting coverage beginning "4-22-11." (Doc. 42-1 at 37, 38) Notably, the first page indicates, "Is any applicant an existing State Farm customer: Yes." Id. at 37.

The plaintiffs contend that they have had homeowner's insurance from State Farm since 2001. (Doc. 48 at 11-12) They provide a letter from State Farm indicating the Naffs had homeowner's coverage "since 2001" with a "cease date" of June 20, 2009. Id. at 24. Of course, it is undisputed that the Naffs had coverage with State Farm after this, at least from April 2011 through the date of the fire. In addition, Mrs. Naff testified she had purchased insurance from State Farm for 17 years. Id. at 33. Thus, there appears to be a factual dispute and the Court cannot say at this time that the Naffs did not a homeowner's policy from State Farm insured since 2001.[2] Thus, the motion is **DENIED**.

**G.    Defendant's Motion in Limine #7 to preclude evidence that any illness was caused or aggravated by the fire loss**

The defendant argues that claims that evidence that physical ailments of the plaintiffs' family should not be introduced because the causal link between the fire loss and the ailment requires the testimony of a doctor. (Doc. 42 at 35-36)

The plaintiffs argue that they do not intend on opining that the fire loss caused or exacerbated their daughter's medical condition. (Doc. 48 at 11-12) However, they will testify that having to make their sick daughter sleep on the floor because they could not afford to buy her a bed after the fire, was a source of emotional distress. Id.

The Court agrees that the plaintiffs may testify as to the distress they suffered because they could not provide their daughter a bed. However, they will refrain from discussion about the child's medical condition *unless* there is evidence that sleeping on the floor contributed to her illness or her

---

[2] However, since they did not own a home until 2001, describing themselves as having State Farm homeowner's insurance for 17 year is not accurate.

illness-related discomfort. Thus, the motion is **DENIED**.

**H.      Defendant's Motion in Limine #8 to preclude evidence related to the size of Mr. Park's law firm**

The plaintiffs agree they will not introduce this evidence.  Thus, the motion is **GRANTED**.

**I.      Defendant's Motion in Limine #9 to preclude opinions from non-disclosed experts and non-disclosed opinions**

The defendant argues the plaintiff should not be permitted to offer a witness to testify as to the financial condition of state farm or to offer documents on this topic because they were not identified in their Rule 26 initial disclosures.  (Doc. 42 at 36-37)  The defendant notes that the plaintiffs did not identify a witness or documents they would use toward demonstrating the punitive damage claim.  Id.

The plaintiffs counter and note that they identified the PMK from the defendant to talk about the defendant's financial condition and documents related to this topic in the joint pretrial report.  (Doc. 48 at 47-48).  They argue that allowing this evidence is not prejudicial because the defendant has known that they sought punitive damages and that the documents upon which they would rely are posted online.  Id.

Rule 37(c) "gives teeth" to the requirements of Rule 26(e) "by forbidding the use on a motion or at trial of any information required to be disclosed by" that rule, unless the party's failure to disclose the required information is substantially justified or harmless. See Yeti by Molly Ltd. v. Deckers Outdoor Corp., 259 F.3d 1101, 1106 (9th Cir.2001).  To determine whether the introduction of evidence should be precluded pursuant to Rule 37, the Court considers: "(1) the surprise to the party against whom the evidence would be offered; (2) the ability of that party to cure the surprise; (3) the extent to which allowing the evidence would disrupt trial; (4) the importance of the evidence; and (5) the nondisclosing party's explanation for it[s] failure to disclose the evidence." San Francisco Baykeeper v. West Bay Sanitary Dist., 791 F.Supp.2d 719, 733 (N.D.Cal.2011).

The Court agrees that this witness and the documents should have been identified by the plaintiffs in their Rule 26 initial disclosures.  However, it agrees also that the failure to do so, in this case, was harmless.  The defendant was always aware that the plaintiffs sought punitive damages, was aware that the plaintiffs would rely upon financial information the defendant posted online for

shareholders (Doc. 48 at 12 n. 1) and the evidence the plaintiffs intend to use is completely within the control of the defendant.   Moreover, at the hearing, the defendant agreed it would provide a 30(b) witness to authenticate the financial documents and to explain them.  In addition, the Court does not find that offering this evidence would disrupt trial and that finds that it is important, at least as to the punitive damage claim, assuming this issue arises.  Thus, the motion is **DENIED**.

**J.     Defendant's Motion in Limine #10 to preclude opinions from non-disclosed experts and non-disclosed opinions**

The parties agree they will limit the expert opinion evidence presented to those disclosed experts and those disclosed opinions.  Thus, the motion is **GRANTED**.

**K.     Defendant's Motion in Limine #11 to preclude evidence that the defendant's retained expert has been retained by the defendant or counsel in the past**

The defendant seeks to preclude evidence that the plaintiffs' retained expert, David Peterson, has been retained by it or Mr. Park's firm in the past. (Doc. 42 at 39)  The defendant argues this evidence is irrelevant and that it violates Rule 403.  Id.

The Court agrees with the plaintiffs that the bias of witnesses, including retained experts, is at issue and may be explored at trial.  Experts frequently are permitted to testify that they have been retained by both sides of disputes in an effort to demonstrate their lack of bias.  Thus, the motion is **DENIED**.

**L.     Defendant's Motion in Limine #12 to preclude "golden rule" arguments**

The parties agree they not make "golden rule" arguments.  Thus, the motion is **GRANTED**.

**M.     Defendant's Motion in Limine #13 to preclude evidence the defendant violated an insurance regulation**

The defendant argues that the plaintiffs should not be permitted to introduce evidence that it violated an insurance regulation because there is no private right of action under these codes. (Doc. 42 at 40)  Thus, they seek an order precluding the plaintiffs from referring to its actions as "illegal."  Id. The Court agrees that the plaintiffs' witnesses may not refer to State Farm's actions as "illegal."  To this extent, the motion is **GRANTED**.  However, the Court disagrees that they are precluded from introducing evidence to demonstrate standards for claims resolution.

The plaintiffs direct the Court to Jordan v. Allstate Ins. Co., 148 Cal.App.4th 1062, 1077 (Cal.App. 2007), as modified on denial of reh'g (Apr. 20, 2007), in which the court determined that a trial court properly considered evidence from an expert as whether Allstate's conduct fell below the standard of care set forth in the Unfair Insurance Practices Act. This Court has adopted the rationale set forth in Jordan. California Dairies, Inc. v. RSUI Indem. Co., 2010 WL 2598376, at *13 (E.D. Cal. June 25, 2010), aff'd, 462 F. App'x 721 (9th Cir. 2011). Thus, the motion is **DENIED**.

**N.      Defendant's Motion in Limine #14 to preclude evidence or argument related to the defendant's motion for summary judgment**

The parties agree they will not refer to the motion for summary filed in this action. Thus, the motion is **GRANTED** and no party may refer to the motion.

**O.      Defendant's Motion in Limine #15 to preclude comment on the motions in limine**

The parties agree they will not refer to these motions in limine. Thus, the motion is **GRANTED** and no party may refer to the motions in limine

**P.      Defendant's Motion in Limine #16 to exclude witnesses from the courtroom before they testify**

The plaintiffs agree with this motion provided that it does not include parties. The Court agrees. Parties may remain in the courtroom throughout the trial regardless of whether they have testified. Experts may be present in the courtroom providing this request is made to the Court in advance. With this proviso, the motion is **GRANTED**.

**Q.      Defendant's Motion in Limine #17 to preclude the affirmative use of deposition testimony**

The parties agree they will use deposition testimony for impeachment or as permitted by law. If there is a need to use the deposition testimony in lieu of live testimony or in addition to it[3], counsel

---

[3] Fed. R. Civ. P. 32(a)(3) allows a deposition transcript to be used by an adverse party for any purpose when the deposition was "of a party or anyone who, when deposed, was the party's officer, director, managing agent, or designee under Rule 30(b)(6) or 31(a)(4)."
   The term "managing agent" within the context of Rule 32(a)(3) "must be interpreted in light of the person's duties, and in comparison to the other people listed in Rule 32(a)(3): 'officers,' 'directors,' and 'Rule 30(b)(6) or 31(a)(4) designees.' " Hynix Semiconductor, 2008 U.S. Dist. LEXIS 11767, at * 17, 2008 WL 2581632. "These other people all have the capability to bind the corporation with their actions, indeed, a 30(b)(6) or 31(a)(4) designee literally speaks for the corporation." Id. Thus, a " 'managing

1  SHALL raise this issue with the Court in advance in order to allow the Court to evaluate whether the
2  deponent falls within Fed. R. Civ. P. 32(a0(3). Thus, to this extent, the motion is **DENIED**.

**R.     Defendant's Motion in Limine #18 to preclude evidence as to how the bankruptcy action was conducted**

The defendant argues that the plaintiffs should be precluded from providing evidence as to how the $6,000 value was determined for the property value set forth in their 2010 bankruptcy filing. (Doc. 42 at 42-50)  The defendant provides excerpts from the deposition transcript of Curtis Floyd, the plaintiffs' attorney for the bankruptcy action, at which the plaintiffs asserted the attorney-client privilege and prevented Mr. Floyd from any information about the information contained in the bankruptcy petition.  Id.  They argue that because the plaintiffs refused to allow investigation into this area during discovery, they should not be permitted to now present evidence on the topic because there is no way for State Farm to counter it.  Id.

The plaintiffs agreed at the hearing that they maintained the privilege throughout discovery and precluded discovery on that basis.  Thus, they will not be permitted to waive the privilege at trial. Thus, the motion is **GRANTED**.

**S.     Defendant's Motion in Limine #19**

The parties agree that this issue will be resolved by the Court in post-trial motions. Thus, this motion is not ripe and the Court **RESERVES** ruling on this issue.

**T.     Defendant's Motion in Limine #20 to prevent Mr. Peterson from testifying about custom and practice evidence or to provide industry examples related to the defendant's duty to the plaintiffs**

Federal Rules of Evidence Rule 702 of the permits the parties to offer "scientific, technical or other specialized knowledge" by a qualified expert if it will "assist the trier of fact to understand the evidence or to determine a fact in issue."  Even still, whether expert testimony will be permitted must first be determined by the Court according to its gatekeeping role. Daubert v. Merrell Dow

---

agent' must have some authority[, similar to an officer or director,] to act on behalf of the corporation or answer for it." Id. at *18 (emphasis added).

Carpenter v. Forest Meadows Owners Ass'n, 2011 WL 3207778 at *5 (E.D. Cal. July 27, 2011)

Pharmaceuticals, Inc., 509 U.S. 579 (1993); Kumho Tire Co. v. Carmichael, 526 U.S. 137 (1999); White v. Ford Motor Co., 312 F.3d 990, 1007 (9th Cir.2002).

The defendant anticipates the plaintiffs will present evidence and argument suggesting that the defendant was obligated to hire someone to conduct the inventory of the content of the plaintiffs' home. (Doc. 42 at 53-54)  The defendant relies upon Silberg v. California Life Ins. Co., 11 Cal.3d 452, 461-462 (1974) but fails to consider the entirety of the portion of the case it cites.  Rather, in Silberg, the experts disagreed whether the insurance company was obligated—according to industry custom—to pay certain medical bills while the workers compensation case proceeded. Id.  However, the express contract provision *required* the insurance company to do so. Id. at 461.  Thus, the Court held that the failure of the plaintiff's to establish a common practice "cannot absolve the insurer.  The scope of the duty of an insurer to deal fairly with its insured is prescribed by law and cannot be delineated *entirely* by customs of the insurance industry." Id. at 462, emphasis added.

The defendant also relies upon Employers Ins. of Wausau v. Albert D. Seeno Const. Co., 945 F.2d 284, 288 (9th Cir. 1991), in which the Court held that whether most other insurance carriers in the industry follow a certain procedure, this does not require that the insurance company at issue do so. The Court held, "The fact that other carriers may choose to segregate does not necessarily arise out of any duty to do so, but may arise from a precautious decision to avoid later complaints of mishandling from the insured."  Id.

The plaintiffs argue that custom and industry standards evidence is admissible to demonstrate an insurance company acted in bad faith.  Notably, in Hangarter v. Provident Life & Acc. Ins. Co., 373 F.3d 998, 1016-1017 (9th Cir. 2004), the Court found that an expert had the proper background to offer opinions related to whether the insurance company acted in bad faith.  The Court observed that the expert had worked in the industry for 25 years, had been trained in how the defendant adjusted claims and had "been found qualified to testify on *insurance practices and standards* within the industry twelve times before . . ." Id. at 1016.  The Court determined that the expert's testimony that relied upon the law and industry practice was proper. Id.  Other cases cited by the plaintiffs similarly found that custom and practice evidence was admissible. Monterey Bay Military Hous., LLC v. Pinnacle Monterey LLC, 2015 WL 4593439, at *12 (N.D. Cal. July 30, 2015); Ramirez-Yanez v. Allstate Ins.

17

Co., 185 L. Ed. 2d 859 (W.D. Wash. Apr. 11, 2013).

Notably, however, the testimony excerpted by the defendants does not demonstrate that Mr. Peterson is suggesting that there is an industry standard. (Doc. 42 at 53) Instead, he notes that "many times the insurance company waives" a particular requirement and that "sometimes" an insurance company will hire an outside agency to conduct an inventory. Id. Unless there is more information about the industry as a whole—about which Mr. Peterson has expertise to opine[4]—the motion is **GRANTED**.

**U.    Defendant's Motion in Limine #21 to prevent Mr. Peterson from offering legal conclusions**

Under the Federal Rules, "[i]f scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education may testify thereto in the form of an opinion or otherwise." Fed. R. Evid. 702. However, "an expert witness cannot give an opinion as to [a] legal conclusion, i.e., an opinion on an ultimate issue of law." Nationwide Transp. Fin. v. Cass Info. Sys., Inc., 523 F.3d 1051, 1058 (9th Cir. 2008); see also Crow Tribe of Indians v. Racicot, 87 F.3d 1039, 1045 (9th Cir. 1996) ("Expert testimony is not proper for issues of law…. They do not testify about the law.") (citations and quotation marks omitted); McHugh v. United Serv. Auto. Ass'n, 164 F.3d 451, 454 (9th Cir. 1999) [An expert's "testimony cannot be used to provide legal meaning or interpret the policies as written."] Though an expert's "opinion is not objectionable just because it embraces an ultimate issue"" (Fed. R. Evid. 704(a)), however, an expert cannot offer opinions as to his legal conclusions. United States v. Duncan, 42 F.3d 97, 101 (2d Cir.1994) ["When an expert undertakes to tell the jury what result to reach, this does not aid the jury in making a decision, but rather attempts to substitute the expert's judgment for the jury's."]

The defendant argues that Mr. Peterson should not be permitted to offer legal conclusions or interpretation of the law. (Doc. 42 at 54-63) In particular, the defendant seeks to preclude testimony

---

[4] If there is other evidence from Mr. Peterson, the Court will consider it **outside** the presence of the jury in a Fed.R.Evid. Rule 104 hearing. It may be necessary to hear Mr. Peterson's testimony on this topic to allow the Court to determine whether this evidence will be permitted.

from Mr. Peterson that the defendant had a duty to hire a person to prepare the inventory (Id. at 60-61), that State Farm was required to provide coverage unless there was conclusive proof that excused it (Id. at 61-62), that State Farm was obligated to state every fact upon which the denial of coverage letter was based (Id. at 62) and whether Jean Daly, in her coverage letter, was obligated to address whether State Farm had waived or was estopped from denying coverage based upon its "bad faith claim handling" (Id. at 63).

The plaintiffs argue that Mr. Peterson will offer testimony that the custom and practice in the industry is to provide someone to assist a customer in developing the inventory but will not offer legal conclusions. (Doc. 48 at 19-20) The plaintiffs clarify that though Mr. Peterson may refer to the law in his testimony, the plaintiffs do not intend to ask Mr. Peterson what the law is related to the burden placed on an insurance company when denying coverage.

Thus, the motion is **GRANTED.** To be clear, the experts SHALL NOT tell the jury what "the law" is or what it requires; that is the province of the Court. They *may* state opinions that State Farms took certain actions, did not take certain actions or should or should not have taken certain actions—including why this is the opinion, even if this is so because the *understanding* of the requirements placed on State Farm by law. Hangarter v. Provident Life & Acc. Ins. Co., 373 F.3d 998, 1017 (9th Cir. 2004). Likewise, experts may not state that the plaintiffs committed a material misrepresentation but may opine as to the statements that were or were not true and why they believe so. No expert may opine that actions did or did not constitute bad faith, did or did not constitute negligence or actions did or did not constitute any other claim raised in this litigation.

IT IS SO ORDERED.

Dated: **August 2, 2016**  /s/ Jennifer L. Thurston
UNITED STATES MAGISTRATE JUDGE